SHAW *v.* BURNHAM.

(Division A.  Oct. 23, 1939.)

[191 So. 484.  No. 33967.]

Everett & Everett, Johnson & Allen, Forrest G. Cooper, and J. M. Forman, all of Indianola, for appellant.

**Moody & Davis** and **Neill & Townsend,** all of Indianola, for appellee.

**Griffith, J.,** delivered the opinion of the court.

At the second Democratic primary, held on August 29, 1939, in Sunflower County, Burnham and Shaw were the candidates for sheriff.  The original tabulation made by

the County Executive Committee of the returns from all the boxes showed for Burnham 2,375, and for Shaw 2,378. Burnham requested a recount of all the boxes and an inspection of all the ballots and papers at each box. This request was granted and both parties with their advisers were present, with the result that the Committee, at the conclusion of the recount and examination, announced the vote as follows: For Burnham 2,353, and for Shaw, 2,361.

Burnham thereupon gave notice that he desired to file, and would file, with the Committee his formal complaint and contest specifying, with the requisite particularity, wherein the actions by the Committee had not been in accord with the facts and the law. The Committee then recessed to a fixed and early day, at which time Burnham was to file his complaint and the specifications thereof. On the day fixed the Committee reassembled and had before it Burnham's particularized contest. Shaw also appeared on the day last mentioned and asked leave and time to file an answer and cross-complaint, which was granted, and Shaw's answer and cross-complaint was filed with the Committee within the time fixed by the Committee. The Committee took no further action than to certify Shaw as the nominee.

Burnham promptly filed his petition for a judicial review, the petition being accompanied by the statutory certificate and a sworn copy of his contest before the Executive Committee; and such steps were forthwith taken as resulted in a hearing before the circuit judge of another district, together with the election commissioners of the county, and on the 26th day of September, 1939 the special tribunal, after a full and painstaking hearing of several days, declared and adjudged that, under the facts and the law applicable thereto Burnham had received 2,363 votes and Shaw 2,358.

We have carefully reviewed each point argued in appellant's brief, in the light of the entire record, including the original of the questioned ballots which are here be-

fore us. We are of the opinion that the trial court was correct in every one of the rulings complained of except as to one ballot, not counted, but which we think should have been counted for Shaw, and which would make the result Burnham 2,363, and Shaw 2,359.

Four ballots cast at the Doddsville box bear the endorsement "Help" or "Helped" or "Received Help," and on two of them this endorsement was on the face instead of the back. These ballots were counted by the court for Burnham, and appellant contends that this was error, citing Section 6244, Code 1930, which is the statute providing the means by which an illiterate voter may be aided. Appellant contends that this statute should have a strict and literal construction, and that since the quoted endorsements do not comply strictly and literally with the statute, the four ballots should have been rejected. It is mandatory that a voter entitled thereto under the facts shall have assistance under that statute; but that part of the section which deals with the notation thereof by the manager or managers is directory in so far as concerns the validity of the ballot when cast. The applicable principles are sufficiently disclosed in State ex rel. Sowell v. Greer, 158 Miss. 315, 322, 130 So. 482.

Referring more particularly to the four Richardson votes offered at the Linn box, which were rejected by the precinct managers and placed in the envelope of Rejected Ballots, but which were counted for Shaw by the Executive Committee; These four voters were not qualified electors of Sunflower County as the Court expressly found; and there is no contention placed before us by appellant that this finding was erroneous on the facts or the law. Manifestly, the Court was correct in deducting these four illegal votes from those counted by the Executive Committee for Shaw.

Appellant Shaw argues that the Court should not have examined into the Indianola box at all, because in Burnham's complaint and the specifications thereof before the Executive Committee, he stated in definite language that

he did not contest the vote at that box. This argument puts aside the fact that appellant Shaw in his cross-complaint, filed with the Executive Committee, averred that in this Indianola box there were valid ballots cast for Shaw which the Committee had failed and refused to count for him, and that votes at that box had been counted for Burnham but which were not in fact cast for him; and this cross-complaint was brought forward as an exhibit to Shaw's answer to the petition in the trial court. Thus appellant himself put the Indianola box in issue and cannot complain that the court went into it. And if it be said that this cross-complaint was subject to challenge for want of particularity and definiteness in respect to the Indianola box, that point could not avail appellant Shaw, because a party is not permitted to raise an objection which has its foundation in a defect in his own complaint or pleadings.

It is contemplated by the statutes, Section 5896, Code 1930, and Section 15, Chap. 19, Laws 1935, Ex. Sess., that, when a person desires to contest the nomination of another person and has the purpose to follow up his contest by a petition for a judicial review, his contest or petition or complaint before the Executive Committee shall be reasonably specific in its charges and not in mere general language. This is a reasonable requirement from several standpoints, but particularly in view of the fact that by Section 7 of said Chapter 19, Laws 1935, Ex. Sess., any candidate has the privilege of a full examination of the boxes and their contents, within the early and appropriate time therein mentioned. And, as a matter of right, when a contestant has made charges of wrong or illegality before the Executive Committee, the contestee may file a cross-complaint with the Committee—the cross-complaint to be in reasonably specific and particular terms and not in assertions of mere generality. The right to file a cross-complaint results, as a matter of necessity, else the contestant might restrict the review to grounds of his own choosing, when upon other grounds the con-

testee could show that other and counterbalancing wrongs and irregularities had been permitted in behalf of the contestant.

The result is, therefore, that whether the particular issue or issues are presented by the contestant or by the contestee, it is the duty of the Executive Committee to act upon them, and its action, or refusal to act, then comes within the scope of the inquiry which either the contestant or the contestee may present, by proper petition and answer thereto, before the special judicial tribunal called out under the provisions of the cited statute.

Affirmed.